```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

QUALITY LABELS & PACKAGING,       )
INC. and DISTRIBUIDORA DE          )
EMPAQUES CENTROAMERICANO, S.A.,    )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )        1:19CV210
                                   )
WELLS FARGO BANK, N.A., DREW'S     )
LOUNGE, LLC, ANDREW I.             )
ROBERTSON, and JOHN DOES 1-5,      )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Now before the court are Defendants' motion to dismiss, (Doc. 5), Plaintiffs' first amended complaint and Plaintiffs' motion to remand, (Doc. 8). As explained herein, this court finds that the motion to dismiss should be denied as moot because Plaintiffs have filed a second amended complaint. This court further finds that the motion to remand should be denied.

## I.   BACKGROUND & PROCEDURAL HISTORY

Plaintiff Quality Labels & Packaging, Inc., is "in the business of printing labels for use in textile products." (Second Amended Complaint ("Second Am. Compl.") (Doc. 6) ¶ 9.) Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is "a national banking institution." (Id. ¶ 3.) Defendant Drew's Lounge, LLC

("Drew's Lounge") is a corporation, owned by Defendant Andrew I. ("Robertson"), that allegedly "opened a Business Choice Checking Account . . . at Wells Fargo . . . [that] was used to receive stolen funds illegally and fraudulently obtained from Plaintiffs." (Id. ¶¶ 4-5, 14.) Plaintiffs also identify as defendants five unknown individuals, John Does 1-5, who allegedly assisted in this conspiracy.

Generally, Plaintiffs allege that Defendant Robertson (through Drew's Lounge) created fake email addresses, duped Plaintiffs into thinking they were dealing with a real supplier of label material, and induced Plaintiffs to transfer thousands of dollars into the Wells Fargo accounts. (Id. ¶¶ 15-20.) Plaintiffs bring the following claims: (1) negligence and violation of UCC Article 4A against Wells Fargo, alleging that the bank failed to follow know-your-customer processes and verify account ownership; (2) conversion against all Defendants; (3) false pretenses against Drew's Lounge, Robertson and John Does 1-5; (4) tortious interference with contracts against Drew's Lounge, Robertson and John Does 1-5; and (5) unfair and deceptive trade practices against all Defendants. (Id. ¶¶ 21-56; Amended Complaint ("First Am. Compl.") (Doc. 2) ¶¶ 21-56.)

Plaintiffs initially filed this lawsuit in Forsyth County Superior Court. The case was then removed by Defendants, who

assert that this court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy alleged on the face of the first amended complaint is greater than $75,000.00. (Doc. 1 ¶¶ 10-12.) Defendants then filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (See Doc. 5.)

Two days after the motion to dismiss was filed, Plaintiffs filed a second amended complaint. (See Second Am. Compl. (Doc. 6).) Plaintiffs then moved to remand the case to state court, (Doc. 8), and submitted a brief in support of that motion, (Pls.' Br. in Supp. of Mot. to Remand ("Pls.' Br.") (Doc. 9).) Defendants responded opposing the motion to remand, (Doc. 14), and Plaintiffs replied, (Doc. 16).

## II. MOTION TO DISMISS

Because this court ultimately determines that the motion to dismiss should be denied as moot without reaching the merits, this court will not set forth the substantive motion to dismiss standard here.

Plaintiffs filed a second amended complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B). (See Second Am. Compl. (Doc. 6).) Because the subsequent complaint automatically supersedes the first amended complaint, rendering it null and void, this court finds that Defendants' motion to dismiss the

first amended complaint should be denied as moot. See, e.g., Shoe Show, Inc. v. One-Gateway Assocs., LLC, No. 1:14CV434, 2015 WL 1128016, at *2 (M.D.N.C. Mar. 12, 2015) ("Defendant's Motion to Dismiss Plaintiff's Original Complaint will be denied as moot because the Original Complaint is superseded by Plaintiff's Amended Complaint.") (internal quotation marks omitted); Baucom v. Cabarrus Eye Ctr., P.A., No. 1:06CV00209, 2006 WL 2569079, at *1 (M.D.N.C. Sept. 1, 2006) ("Defendant's motion to dismiss seeks dismissal of a superceded complaint, and the court must regard the motion as moot.").

### III. **MOTION TO REMAND**

#### A. **Legal Standard**

28 U.S.C. § 1441 allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to federal court.

> [A] party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter.

Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008); see also Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148,

151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.").

Diversity jurisdiction is proper only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The amount in controversy is determined at the time of removal and "the status of the case as disclosed by the plaintiff's complaint [at that time] is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291 (1938) (footnote omitted); see also Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) ("The removability of a case depends upon the state of the pleadings and the record at the time of the application for removal.") (quoting Ala. Great. S. Ry. Co. v. Thompson, 200 U.S. 206, 216 (1906)) (emphasis added). "[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." St. Paul Mercury, 303 U.S. at 293 (footnote omitted).

"If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate

whether the complaint itself satisfies the defendant's jurisdictional burden." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010); see also Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir. 1993) ("The general federal rule is to decide the amount in controversy from the complaint itself.").

> When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to show what the stakes of litigation are given the plaintiff's actual demands. To resolve doubts regarding a defendant's asserted amount in controversy, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.

Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 194 (4th Cir. 2017) (internal quotation marks and citations omitted); see also Michelin, 613 F.3d at 1061; Corwin Jeep Sales & Serv., Inc. v. Am. Motors Sales Corp., 670 F. Supp. 591, 596 (M.D. Pa. 1986) ("When the complaint does not contain a demand for a specific monetary amount, the court may look to the petition for removal, or make an independent appraisal of the monetary value of the claim.").

In other words, "[w]here the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith." Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335–36 (5th Cir. 1995). But, where the total amount in controversy is not readily apparent from the

face of the complaint, the district court should independently determine the reasonable value of the claims and can "require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal." Id. at 1336 (footnote omitted).

Treble damages and punitive damages are generally included within the amount in controversy when the plaintiff is permitted to recover those damages under applicable law. See Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount." (footnote omitted)); see also R.L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc., 23 F. App'x 141, 145 n.3 (4th Cir. 2001) ("When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages, available to" the plaintiff.); Saval v. BL Ltd., 710 F.2d 1027, 1033 (4th Cir. 1983) ("Appellants' final contention is that they are entitled to punitive damages, which may be added to the amount in controversy in order to reach the jurisdictional amount."); Marchese v. JPMorgan Chase Bank, N.A., 917 F. Supp. 2d 452, 460–61 (D. Md. 2013) ("Trebled damages are considered when determining the amount in controversy.").

When punitive damages are alleged generally but not in a specific amount, courts often employ a two-part test to determine whether the punitive damage claim brings the amount in controversy over the jurisdictional threshold. "The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." Cadek v. Great Lakes Dragaway, Inc., 58 F.3d 1209, 1211–12 (7th Cir. 1995) (internal quotation marks omitted); see also Wiemers v. Good Samaritan Soc'y, 212 F. Supp. 2d 1042, 1047 (N.D. Iowa 2002) (collecting cases; stating that "the test the court must apply is whether it is more likely than not that the amount of the claim will exceed the jurisdictional amount of $75,000").

**B.    Analysis**

Defendants assert in their notice of removal that the amount-in-controversy requirement is clearly satisfied on the face of the complaint. (See Doc. 1 at 3–4.) Plaintiffs, however, argue that "the amount in controversy set forth in [the First] Amended Complaint was ambiguous, perhaps resulting in Defendant's confusion; however, Plaintiffs do not intend and did not intend to seek damages exceeding the jurisdictional amount

of $75,000.00." (Pls.' Br. (Doc. 9) at 3.) Plaintiffs further state that, while "the references to punitive and treble damages cause ambiguity, . . . Plaintiffs have cleared up this ambiguity" by filing a second amended complaint that removes those allegations. (Doc. 16 at 1–2.)

It is well-established that the amount in controversy is determined based on the pleadings at the time of removal and that subsequent amendments are irrelevant to this inquiry. See, e.g., St. Paul Mercury, 303 U.S. at 291–93. Therefore, this court may look only to the first amended complaint to determine the reasonable value of Plaintiffs' claims.

Although Plaintiffs' subsequent amendments have no bearing on the removal inquiry, the court is still required to evaluate whether Defendants have met their burden of demonstrating subject matter jurisdiction.

This court reads claims one through six of the first amended complaint as asserting alternative legal theories of recovery for the same injury: the loss of $42,334.72 allegedly transferred into the Wells Fargo accounts. (See First Am. Compl. (Doc. 2) ¶¶ 30, 36, 51–56.) Therefore, the value of the individual claims cannot be aggregated for amount-in-controversy purposes because Plaintiffs can recover this amount only once. See, e.g., Holmes v. Boehringer Ingelheim Pharms., Inc., 158

F. Supp. 2d 866, 868 (N.D. Ill. 2001) ("Counts I and II of the plaintiff's complaint therefore state different legal theories of recovery for the same injury, not separate claims for relief, and they cannot be aggregated to meet the jurisdictional amount of § 1332(a)."); Powers v. FMC Corp., 155 F. Supp. 2d 307, 310 (E.D. Pa. 2001) ("These three counts assert three different theories — negligence, strict liability, and breach of warranty — for the same set of injuries allegedly suffered by [the plaintiff]. Thus, these three counts are incapable of establishing with any certainty damages greater than $50,000.").

Rule 8 of the North Carolina Rules of Civil Procedure was amended in 1990 to require that:

> [i]n all negligence actions, and in all claims for punitive damages in any civil action, wherein the matter in controversy exceeds the sum or value of ten thousand dollars ($10,000), the pleading shall not state the demand for monetary relief, but shall state that the relief demanded is for damages incurred or to be incurred in excess of ten thousand dollars ($10,000).

1990 N.C. Sess. Laws 995 (S.B. 734). That provision was subsequently amended in 2014 to modify the pleading amount from more than $10,000.00 to more than $25,000.00. N.C. Gen. Stat. § 1A-1, Rule 8(a)(2); see also 2014 N.C. Sess. Laws 115 (H.B. 1133).

Plaintiffs allege a cause of action pursuant to N.C. Gen. Stat. § 75-16 and request damages "in an amount exceeding Ten Thousand and no/100 Dollars ($10,000.00), the trebling of said damages and attorneys' fees . . . ."[1] (First Am. Compl. (Doc. 2) ¶ 56.) The reasonable value of this claim might be subject to some ambiguity given the pleading requirements of N.C. Gen. Stat. § 1A-1, Rule 8 and the 2014 change from $10,000.00 to 25,000.00. However, this court finds that Plaintiffs' allegations in the sixth claim for relief are readily construed to allege compensatory damages in the amount of $42,334.72. The possible trebling of those damages brings the total amount to $127,004.16.

First, N.C. Gen. Stat. § 1A-1, Rule 8, does not provide an outer limit for the damages amount if the allegation is simply that damages "exceed" $25,000.00 (or $10,000.00). (See First Am. Compl. (Doc. 2) ¶ 56.) In fact, the current rule permits Plaintiffs to allege a specific amount only if the damages sought are less than $25,000.00. This court therefore concludes that Plaintiffs' reference to damages "in an amount exceeding"

---

[1] N.C. Gen. Stat. § 75-16 authorizes treble damages for any plaintiff injured "in violation of the provisions of this Chapter." Plaintiffs' unfair trade practices claim is brought pursuant to N.C. Gen. Stat. § 75-1.1 et seq. (First Am. Compl. (Doc. 2) ¶ 52.) If Plaintiffs prevail on this claim, they may recover treble damages under North Carolina law.

$10,000.00 is a general allegation and not subject to an upper limit of either $10,000.00 or $25,000.00.

Second, the other allegations in the sixth claim for relief clearly illustrate the amount of damages Plaintiffs request in the complaint. The sixth claim for relief incorporates by reference all prior allegations and focuses on Defendants' role in allegedly causing "Plaintiffs' loss of funds." (Id. ¶¶ 51–52.) Those earlier allegations specifically detail transactions in which Defendants allegedly fraudulently obtained a total of $42,334.72 from Plaintiffs. (See, e.g., id. ¶¶ 14–17.) The sixth claim for relief further states that "Defendants' conduct, representations, and statements, leading to Plaintiffs' loss of funds constitute conversion . . . [and] unfair and deceptive acts in violation of N.C. Gen. Stat. § 75-1.1 et seq." (Id. ¶ 52.) In light of these allegations, this court finds that Plaintiffs' sixth claim for relief seeks $42,334.72 in compensatory damages, which, when trebled, produces a total prayer for relief in the amount of $127,004.16.

Plaintiffs contend that the allegations are ambiguous and that Defendants justifiably misunderstood the amount of damages alleged when they removed this case. Plaintiffs argue as follows:

> Admittedly, the amount in controversy set forth
> in Plaintiffs' Amended Complaint was ambiguous,
> perhaps resulting in Defendant's confusion; however,
> Plaintiffs do not intend and did not intend to seek
> damages exceeding the jurisdictional amount of
> $75,000.00. Rather, Plaintiffs seek actual damages in
> the amount of $42,334.72 and $10,000.00 in attorney's
> fees totaling $52,334.72 plus interest and costs —
> well under the $75,000.00 jurisdictional threshold.

(Pls.' Br. (Doc. 9) at 3.) This argument is not persuasive. The court cannot reconcile Plaintiffs' statement that they seek damages of $42,334.72 and $10,000.00 in attorney's fees with the plain language of the first amended complaint: "Plaintiffs are entitled to recover from Defendants damages in an amount exceeding Ten Thousand and no/100 Dollars ($10,000), the trebling of said damages and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16." (First Am. Compl. (Doc. 2) ¶ 56 (emphasis added).) It may be that Plaintiffs hope to ultimately recover only a total of $52,334.72. But Plaintiffs' subjective intent does not control once Plaintiffs have submitted a complaint seeking more than the jurisdictional amount. See St. Paul Mercury, 303 U.S. at 294 ("If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice.").

If Plaintiffs have misstated their desired recovery, they "may resort to the expedient of suing for less than the jurisdictional amount" in a subsequent suit. Id. The first amended complaint, specifically in the sixth claim for relief, sets out a claim for an amount well above $75,000.00. Absent some showing that this claim is not bona fide, it cannot be disregarded even though Plaintiffs might actually seek a lesser amount during the litigation.

The first amended complaint also includes a claim for punitive damages against certain Defendants "under N.C. Gen. Stat. §§ 1D-1, et seq. and 99A-1." (First Am. Compl. (Doc. 2) ¶ 58.) Even assuming for argument that Plaintiffs do seek only a total compensatory recovery of $52,334.72, as Plaintiffs contend, the punitive damages claim nevertheless pushes them above the jurisdictional threshold. N.C. Gen. Stat. § 1D-15(a) requires that, to recover punitive damages, a plaintiff must prove "by clear and convincing evidence" either fraud, malice, or willful or wanton conduct by the defendant. Plaintiffs allege that Defendants acted "with malice and without lawful justification," (id. ¶ 49), and North Carolina courts have upheld punitive damage awards under § 1D-15(a) for tortious interference with contract claims, see, e.g., United Labs., Inc. v. Kuykendall, 335 N.C. 183, 194–95, 437 S.E.2d 374, 381 (1993)

(affirming a $100,000.00 punitive damage award on a tortious interference claim).

Having determined that Plaintiffs might conceivably recover punitive damages under state law, this court next considers whether "it is more likely than not that the amount" of punitive damages would bring the total recovery above $75,000.00. Wiemers, 212 F. Supp. 2d at 1047. Courts may look to the typical ratio of compensatory to punitive damages to determine the reasonable value of an unspecified punitive damages claim for amount-in-controversy purposes. See Arnold v. Guideone Specialty Mut. Ins. Co., 142 F. Supp. 2d 1319, 1322 (N.D. Ala. 2001). In Kuykendall, the North Carolina Supreme Court upheld a punitive damages award of $100,000.00 on an unfair competition claim where the underlying compensatory damages were $15,000.00. See 437 S.E.2d at 377. In discussing the compensatory-to-punitive-damages ratio, the Supreme Court has generally endorsed "[s]ingle-digit multipliers." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003).

Here, any reasonable estimate of punitive damages that might be recovered on top of $52,334.72 pushes the total amount in controversy well above $75,000.00. Even using a conservative one-to-one ratio and disregarding any attorneys' fees for purposes of the calculation, Plaintiffs can reasonably expect to

recover $42,334.72 in punitive damages (and a total amount of $84,669.44).

Defendants have met their burden of establishing subject matter jurisdiction. Plaintiffs' motion to remand the case to state court will be denied.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' motion to dismiss Plaintiffs' amended complaint, (Doc. 5), is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion to remand, (Doc. 8), is **DENIED.**

This the 9th day of July, 2019.

_____
United States District Judge